# Exhibit 2

Exhibit 2

# PHILLIPS

## CONSIGNMENT AGREEMENT

**Consignor:** JN Contemporary Art, LLC
**Consignor Address:**
980 Madison Avenue, 3rd Floor
New York, NY 10075
United States

**Client Number:** 879130

**Contract Date:** 27 June 2019

**Contract Number:** 04NYD752

**Department:** 20th Century & Contemporary Art - NY

**Sale No.:** NY010320

**Sale Date:** __ May 2020

| | |
|---|---|
| The information set forth in these boxes is for ease of reference only. You agree to be bound by the terms and conditions set forth in the body of this Agreement. | |
| **SELLER'S COMMISSION**<br>20% of the Hammer Price above the Guaranteed Minimum | **PHOTOGRAPHY**<br>Illustration charges waived. |
| **LOSS OR DAMAGE TO PROPERTY**<br>Phillips to absorb. | **MATTING AND FRAMING**<br>Phillips to absorb. |
| **SHIPPING**<br>Phillips will arrange at our expense to secure, insure and transport property to our custody and control. | **INSTALLATION CHARGES**<br>Phillips to absorb. |
| **IMPORT DUTIES AND CUSTOMS FEES**<br>Phillips to pay as applicable. | **WITHDRAWAL**<br>No withdrawal by Consignor |
| **UNSOLD PROPERTY**<br>Unsold charge waived. | |
| **SPECIAL TERMS**<br>Guaranteed Minimum: USD $5,000,000 (five million United States dollars), subject to the terms and conditions of this Agreement: see Paragraphs 11 and 2. | |

Thank you for consigning your property to us. As used herein, "Phillips," "we," "us" and "our" mean Phillips Auctioneers LLC and its affiliated companies, and "Consignor," "you" and "your" and mean JN Contemporary Art, LLC. The terms and conditions of the consignment are as follows:

1. CONSIGNMENT

You hereby consign to us the property listed on the attached Property Schedule (the "Property") (each item of Property may sometimes be referred to in this Agreement as a "Lot") which we, as your exclusive agent, will offer for sale at public auction, unless otherwise agreed, subject to the provisions set forth below, the Conditions of Sale printed or referred to in the auction catalogue and published at www.phillips.com and any additional notices or terms printed in the auction catalogue and published at www.phillips.com or announced by the auctioneer.

2. COMMISSION

For our services, we will receive and retain from the proceeds of the sale of the Property (a) a commission from you in the amount equal to twenty percent (20%) of the amount by which the final bid price on the Property (the "Hammer Price") exceeds the Guaranteed Minimum (as such term is defined in Paragraph 11(a) below): and (b) a commission from the buyer of each Lot sold, which shall be calculated as a percentage of the Hammer Price, as set forth in the Conditions of Sale printed or referred to in the auction catalogue and published at www.phillips.com (the "Buyer's Premium").



Consignor (Initials)    Phillips (Initials)

## 3. LOSS OR DAMAGE TO PROPERTY

(a) Phillips will be responsible to you for any loss or damage to the Property in accordance with the liability limitations set forth in this Paragraph from the time the Property is delivered to us or to shippers acting under our instructions until the Property ceases to be in our custody and control. For purposes of this Agreement, Phillips will be deemed to have custody and control of the Property until it is released to the buyer if sold, or upon payment to you of the Guaranteed Minimum, whichever is the earlier.

(b) The maximum amount of our liability to you resulting from loss or damage to any Lot shall not exceed an amount equal to the greater of: (i) the Guaranteed Minimum: or (ii) the Hammer Price from and after the auction and in any event shall be net of any commissions or expenses payable by you pursuant to this Agreement, the Buyer's Premium or applicable VAT. Neither Phillips nor our insurers shall be responsible for loss or damage resulting from causes customarily excluded by insurers, such as (1) inherent defects in the Property; (2) humidity or change of weather or other atmospheric conditions not within our control; (3) expected wear and tear; (4) damage caused by war, terrorism or radioactive contamination; (5) damage occurring while a Lot is in the care or custody of shipping and packing agents retained by you (even if recommended by Phillips) and (6) damage occurring while a Lot is in the care or custody of a restorer if you consent in writing to such custody.

(c) In the event of loss or damage to any Lot prior to the auction of ten percent (10%) or more of the limit of liability set forth above (as determined by a mutually agreed third-party appraiser), then the Guaranteed Minimum shall be null and void and you, in your sole discretion, may decide whether to withdraw the Lot or to include such Property in the next appropriate auction after restoration has been completed with mutually agreed revised pre-sale estimates and terms of sale.

## 4. SHIPPING, IMPORT DUTIES AND CUSTOMS FEES

Unless you instruct us otherwise, we will arrange, at our cost and expense, shipment of the Property from you to us. We will also pay all applicable customs duties and customs user fees on the Property.

## 5. OTHER SALE-RELATED EXPENSES

We agree to pay for all other expenses relating to the auction, including, but not limited to, (a) catalogue illustration, (b) catalogue production and mailing and (c) special advertising and marketing efforts to promote the sale of the Property.

## 6. PRE-SALE ACTIVITIES

(a) The Property shall be offered for sale in New York in our major spring 2020 evening auction of 20th Century & Contemporary Art currently scheduled for May 2020. Subject to the foregoing, we have the sole right in our reasonable discretion, and as we deem appropriate: (i) to select, change or reschedule the place, date and time for the auction but any change to a later date than May 2020 would be subject to your prior written consent ; (ii) to market and promote the sale of the Property and the auction; (iii) to describe, illustrate and present the Property in the catalogue, on our website, in other marketing materials, and in any condition report; (iv) to use sale-related marketing materials before, during and after the auction without payment to you for doing so; (v) to set and revise the estimates of the Property at any time, it being understood that any such change shall not affect Phillips's obligation to make payment to you of the Guaranteed Minimum in accordance with Paragraph 11(a) below; (vi) to arrange the lot order of the Property within the auction; (vii) to rely on any expert we have consulted or upon the results of any physically non-invasive tests or analyses to verify the authenticity, attribution or quality of the Property whether before or after the auction; (viii) to include in any marketing materials the description of the owner of the Property as agreed with you and any other information provided to or discovered by us in connection with the Property and (ix) to grant extended payment terms of up to 90 days after the date of the auction to prospective buyers of the Property.

(b) Phillips shall have the right to photograph, illustrate or otherwise produce images of the Property. Phillips shall retain the exclusive copyright to all catalogue and other illustrations and descriptions of the Property created by us and shall have the right to use such illustrations and Property descriptions in whatever way we deem appropriate, both before and after the sale.

(c) We make no representations or warranties to you with respect to the Property, its authenticity, attribution, condition or otherwise.

450 PARK AVENUE NEW YORK, NY 10022 tel + 1 212 940 1292 fax + 1 212 940 1378 www.phillips.com
Auction License – 2013224

*JN*
Consignor (Initials)

*GJ*
Phillips (Initials)

7. RESERVES AND ESTIMATES

(a) The estimates and the reserve, which is the confidential minimum price below which the Property may not be sold (the "Reserve"), shall be set in our sole discretion; <u>provided, however,</u> that nothing set forth in this Paragraph 7(a) shall affect Phillips's obligation to make payment to you of the Guaranteed Minimum in accordance with Paragraph 11(a) below.

(b) We make no representations or warranties to you about the actual price at which a Lot will sell and you agree not to rely on pre-sale estimates as a prediction or guarantee of the value of a Lot or the price at which it will be sold.

8. REPRESENTATIONS AND WARRANTIES

(a) You represent and warrant to us and to any buyer of the Property, now and at the time of the sale, that: (i) you are the sole and absolute owner of the Property or, if you are acting as an agent or fiduciary, that your principal is the sole and absolute owner of the Property; (ii) you have the right and authority to consign the Property to us for sale and to sell it in accordance with the terms of this Agreement; (iii) the Property is now, and at the time of the auction will be, free and clear of all liens, charges, mortgages, third party rights, encumbrances and claims of others; (iv) there is not now, and until the completion of the sale by Phillips there will not be, any restriction on your right to consign the Property for sale or on our right to sell the Property; (v) good and marketable title and right to possession will pass to a buyer upon sale free and clear of any liens, charges, mortgages, third party rights, encumbrances and claims of others; (vi) you have no reason to believe that the Property is counterfeit or not as described on the Property Schedule; (vii) you have furnished us with all of the information and documents in your possession or control concerning the Property, including information about its condition, provenance and authenticity and any alterations, repairs or restoration thereto and all such information is accurate to the best of your knowledge; (viii) if the Property has been imported into the United States, to the best of your knowledge, the Property has been lawfully so imported and has been lawfully and permanently exported as required by the laws of any country (including any laws or regulations applicable in the European Union) in which it was located; (ix) any required declarations upon the export and import of the Property have been completed fully and accurately and any duties and taxes on the export and import of the Property have been paid unless otherwise noted; (x) to the best of your knowledge, there is no restriction on our right to photograph, illustrate, describe or exhibit the Property or to use photographs or other materials provided to us by you; (xi) you have told us about and will continue to tell us about all facts and matters of which you are aware which might affect the sale or value of the Property or the terms upon which we will offer the Property, including whether you have tried to sell the Property within the last three (3) years; and (xii) you will pay any and all applicable taxes and duties that may be due from you in connection with the sale of the Property.

(b) You further represent and warrant to us that the address and contact information for you set forth on the first page of this Agreement is complete and accurate. We reserve the right to request that you furnish us with government-issued identification and proof of address.

(c) You agree that the foregoing representations and warranties are for the benefit of Phillips and the buyer of the Property from Phillips and that such representations and warranties shall survive the completion of the transactions contemplated by this Agreement. You further agree to notify us promptly in writing of any events or circumstances to your knowledge that may cause such representations and warranties to be inaccurate or breached in any way.

9. CONDUCT OF THE SALE

(a) We have absolute discretion in all aspects of the conduct of any auction, including, but not limited to, the time, manner and place of exhibition and auction of the Property and the rules and procedures relating to bidding and sale.

(b) The auction of the Property shall be conducted in accordance with Phillips' Conditions of Sale and Authorship Warranty printed or referred to in the auction catalogue and published at www.phillips.com. In the event of any conflict between the Conditions of Sale and Authorship Warranty, on the one hand, and this Agreement, on the other hand, the Conditions of Sale and Authorship Warranty will prevail in respect of your relationship with the buyer of any Property, but this Agreement will prevail in respect of your relationship with Phillips.

(c) All bids to protect the Reserve will be made by us as your agent. Neither you, nor anyone whom we determine in our sole discretion may be acting on your behalf, may bid on the Property. If you or your agent is nonetheless

_____  _____
Consignor (Initials)              Phillips (Initials)

a successful bidder for any Lot, the obligation to make payment of the Guaranteed Minimum shall be null and void and you: (i) shall immediately pay us the Buyer's Premium and the commission payable pursuant to Paragraph 2(a) above; and (ii) may not avail yourself of any rights afforded to a buyer in the Conditions of Sale or Authorship Warranty applicable to the auction or by law.

(d) If a Lot is not sold, we will announce that it has been "passed," "withdrawn," "returned to owner" or "bought-in."

(e) Employees of Phillips, including the auctioneer, may bid at the auction by placing absentee bids so long as they do not know the Reserve and otherwise comply with our employee bidding procedures.

10. WITHDRAWAL

(a) We may withdraw the Lot at any time before sale if in our sole judgment after consultation with you: (i) there is doubt as to its authenticity, authorship or attribution; (ii) there is doubt as to your title or authority to place it for sale; (iii) any representation or warranty that you have made to us pursuant to Paragraph 8 is materially inaccurate or we reasonably doubt its accuracy; (iv) you have breached, or indicated that you intend to breach, any provision of this Agreement in any material respect; (v) the Lot is damaged to the extent that it is not in the condition in which it was when we agreed to sell it; or (vi) other just cause exists. In the event that we withdraw the Property from sale pursuant to this Paragraph 10 (a), our obligation to make payment of the Guaranteed Minimum shall be null and void and there will be no withdrawal fee or costs payable by you.

(b) You may not withdraw the Property from sale after the date of this Agreement for any reason.

11. GUARANTEE OF MINIMUM PRICE

(a) Subject to: (i) confirmation by Phillips following physical inspection of the Property that it is in excellent condition; and (ii) any applicable withdrawal or termination provision set forth under this Agreement, Phillips guarantees that you shall receive at least USD $5,000,000 (five million United States dollars), with respect to the sale of the Property (the "Guaranteed Minimum").

12. SETTLEMENT

In this Agreement, the following terms have the following meanings:

"**Guaranteed Minimum**" means an amount equal to USD $5,000,000 (five million United States dollars).

"**Net Sale Proceeds**" has the meaning given to it in Paragraphs 12 (a) or (b) as applicable;

"**Overage**" means the amount by which the Hammer Price of the Property exceeds the Guaranteed Minimum;

"**Seller's Overage Portion**" means the Overage less the commission payable by you pursuant to Paragraph 2(a) above;

"**Settlement Date**" means such date as is ninety-five (95) calendar days after the Auction and if this day is not a working day, then the next following working day.

(a) If the Property is unsold in the Auction or is sold in the Auction for a Hammer Price which is less than the Guaranteed Minimum, Phillips will pay you the Guaranteed Minimum, less (if applicable) any sale-related expenses or amounts payable by you to Phillips or one of our affiliated companies, whether related to the sale of the Property or otherwise. The resulting amount will be considered the Net Sale Proceeds for the purposes of this Agreement.

(b) If the Property is sold in the Auction and the Hammer Price of the Property exceeds the Guaranteed Minimum, Phillips will pay you an amount equal to the Hammer Price less the commission payable by you pursuant to Paragraph 2(a) above, and less (if applicable) any sale-related expenses or amounts payable by you to Phillips or one of our affiliated companies, whether related to the sale of the Property or otherwise. The resulting amount will be considered the Net Sale Proceeds for the purposes of this Agreement.

(c) Phillips will pay you the Net Sale Proceeds thirty-five (35) days after the date of the Auction if we have received payment from the buyer of the purchase price in full and cleared funds by this date or if we have not, within five (5) business days of us receiving full and cleared payment from the buyer. If by the

4


Consignor (Initials)   Phillips (Initials)

Settlement Date you have not received the Guaranteed Minimum in full, provided the sale has not been cancelled for any reason, we will send you the difference between the Guaranteed Minimum and the and the amounts paid to you (if any).

(d) Provided Phillips has received and collected payment from the buyer of the Overage and Buyer's Premium in full and cleared funds, Phillips will on the Settlement Date as part of the Net Sale Proceeds referred to in Paragraph 12 (b), pay you the Seller's Overage Portion or if we have not received payment from the buyer by this date, we will pay you the Seller's Overage Portion within five (5) business days of us receiving payment of the purchase price from the buyer in full and cleared funds.

(e) Phillips will not pay you Net Sale Proceeds if we have received prior to the Settlement Date notice of the buyer's intention to rescind the sale due to a bona fide claim relating to the warranty of authenticity or title.

(f) Unless otherwise agreed in writing at least three (3) business days prior to the date of the auction, payment of Net Sale Proceeds will be made to you in the currency of the country in which the auction is held ("Local Currency") and in accordance with the Payment Instructions attached to this Agreement.

(g) If you instruct us to pay you the Net Sale Proceeds in a currency which is different to the Local Currency ('Non-Local Currency'):

   (i) The Guaranteed Minimum portion of the Net Sale Proceeds will be calculated using the Local Currency to Non-Local Currency exchange rate quoted to us by our treasury department on the date on which we make payment to you of the Guaranteed Minimum; and

   (ii) The Seller's Overage Portion of Net Sale Proceeds (if applicable) will be calculated using the Local Currency to Non-Local Currency exchange rate quoted to us by our treasury department on the date on which we make payment to you of the Seller's Overage Portion.

For the avoidance of doubt, the exchange rates quoted to us by our treasury department will be binding and final.

(h) We may, in our sole discretion, elect to have a third party underwrite the Guaranteed Minimum amount set forth in Paragraph 11 (a) above and may also offer, in our reasonable discretion, extended payment terms of up to ninety (90) days to prospective purchasers; provided, however, that nothing set forth in this subparagraph will affect our obligation to make payment to you of the Guaranteed Minimum.

(i) In the event that the Hammer Price of the Property exceeds the Guaranteed Minimum, we have no obligation to enforce payment by the buyer of the Overage and we do not guarantee that payment of the Overage will be received from the buyer. In the event that the buyer defaults (i.e., the buyer has failed to make payment of the purchase price by the date that is ninety (90) calendar days following the auction) we will notify you and will agree with you whether: (i) to cancel the sale, allow you to retain any installment payments as liquidated damages and return the Property to you; (ii) to sue the defaulting buyer to enforce payment; or (iii) to consummate the sale of the Property at the Guaranteed Minimum. In the event that we wish to consummate the sale at the Guaranteed Minimum and you do not agree, you may in your sole discretion elect to declare the Guaranteed Minimum null and void, in which case we will return the Property to you upon repayment to us of any amount that we have already paid to you with regard to the sale of the Property. Otherwise, in such circumstance, the sale shall be consummated at the Guaranteed Minimum and neither we nor the defaulting buyer will have any further liability to you in respect of the Guaranteed Minimum or the Property. Notwithstanding the foregoing, if we subsequently collect any Overage from the defaulting buyer, we will pay you that Overage less the commission payable by you pursuant to Paragraph 2 (a) above. In the event we sue the defaulting buyer and collect interest on the late payment, we will retain for our own account only such portion of the interest as relates to the Buyer's Premium and the commission referred to in Paragraph 2(a) above plus the out-of-pocket fees incurred by us in enforcing payment.

(j) Title to the Property shall pass to Phillips or the buyer, as the case may be, upon the earlier to occur of (i) Phillips' receipt of the Purchase Price for the Property from the buyer in full and cleared funds or (ii) payment to you of the Guaranteed Minimum. Thereupon, we or the buyer, as the case may be, will have the benefit of all of your representations, warranties and indemnities set forth in this Agreement.

(k) We may, without notice to you, rescind a sale where we reasonably consider that the buyer has a valid claim under our Authorship Warranty or we reasonably believe that: (i) there is a material breach of your representations and warranties set forth in this Agreement; or (ii) there is merit to a third party adverse claim in connection with the Property. Within ten (10) days of receipt of our notice of rescission of the sale, you will return to us the Net Sale Proceeds paid to you in connection with the rescinded sale. Following receipt of the

5

*JN*       *[signature]*
Consignor (Initials)     Phillips (Initials)

Net Sale Proceeds in cleared funds, we shall return the rescinded Lot within two business days to you unless doing so would expose us to any legal liability. We shall remain entitled to the Net Sale Proceeds if for any other reason beyond our reasonable control we are unable to return the Property to you.

## 12. TERMINATION

(a) In the event that the auction is postponed for circumstances beyond our or your reasonable control, including, without limitation, as a result of natural disaster, fire, flood, general strike, war, armed conflict, terrorist attack or nuclear or chemical contamination, we may terminate this Agreement with immediate effect. In such event, our obligation to make payment of the Guaranteed Minimum shall be null and void and we shall have no other liability to you.



(b) We may terminate this Agreement prior to the auction with immediate effect, in which case we shall have no obligation to make payment of the Guaranteed Minimum and shall have no other liability to you, if: (i) *intentionally omitted;* (ii) there is a depreciation of 10% or more in the rate of exchange of the US dollar against any of the major traded currencies since the date of this Agreement, the rate of exchange for these purposes being the daily spot exchange rate published by our bank in New York; (iii) there is a general suspension of trading in or limitation on prices for securities traded on the New York or London Stock Exchange within the month preceding the auction; or (iv) within three (3) months preceding the auction, at any other auction of items similar to the Property (A) the aggregate Hammer Price of all sold property was less than sixty percent (60%) of the aggregate low estimate of the property offered for sale or (B) the percentage of all property sold at such auction was less than sixty percent (60%).

## 13. INDEMNIFICATION

You agree to defend, indemnify and hold harmless each of Phillips and the buyer of any Lot from and against any and all claims, actions, liabilities, losses, damages and expenses of any kind (including reasonable legal fees) relating to any breach or alleged breach (whether alleged by us or a third party) of any of your obligations, representations or warranties set forth in this Agreement. Your indemnification obligation hereunder shall survive the completion of the transactions contemplated by this Agreement.

## 14. LIMITATIONS ON OUR LIABILITY

(a) Our description of the Property is partly dependent upon the information provided by you and experts we may consult, the amount of research and any examination or testing we may reasonably and practically carry out prior to an auction, and the generally accepted opinion of experts available at the time of cataloguing the Property. We shall exercise reasonable care when preparing catalogue descriptions and condition reports in a manner consistent with our role as auctioneers of a large number of lots and subject to the risks inherent to describing unique works of art and collectible items. Subject to the foregoing and to subparagraph (d) below, you agree that Phillips shall not be liable for: (i) any errors or omissions in any oral or written information provided to you; (ii) any acts or omissions in connection with the preparation for or conduct of auctions or for any other matter relating to the sale of any Property; (iii) failure to sell the Property at all, at the Reserve, or within the pre-sale estimates; (iv) acts or omissions of any restorers, experts, warehousemen, contractors or other shipping agents whether or not retained by us on your behalf, except as otherwise specifically stated in this Agreement, arising out of our willful misconduct, or for liability which the law does not permit us to disclaim.

(b) Without in any way diminishing the limitations on our liability set forth in this Paragraph and subject to subparagraph (d) below, you agree that in no event shall our liability to you from any cause whatsoever exceed the greater of the: (i) Guaranteed Minimum; or (ii) the Hammer Price, for any Lot.

(c) Subject to subparagraph (d) below, we shall not be liable to you for any loss of profits, loss of business, loss of anticipated savings or for any special, indirect, incidental or consequential costs, damages, charges, or expenses, to the fullest extent permitted by the law.

(d) No provision in this Agreement shall be deemed to exclude or limit our liability to you in respect of: (i) any fraud or fraudulent misrepresentation made by us; or (ii) personal injury caused by our negligent acts or omissions.

6

15. PRIVACY

(a) You acknowledge and understand that we may process your personal data (including potentially special category data) in accordance with our privacy policy as published at www.phillips.com or available by emailing dataprotection@phillips.com.

(b) Our privacy policy sets out: (i) the types of personal data we will or may collect and process; (ii) the purposes for which we will or may process your personal data (including for example the provision of auction, private sale and related services; the performance and enforcement of these terms and conditions; the carrying out of identity and credit checks; keeping you informed about upcoming auctions, exhibitions and special events; and generally where reasonably necessary in the management and operation of our business); (iii) the lawful bases on which we rely in undertaking our processing of your personal data; (iv) your rights in respect of our processing of your personal data; and (v) various other information as required by applicable laws.

16. SALES, SERVICES, OR CONSIGNMENT TAX

If any sales, services or consignment tax is payable, it is payable in accordance with applicable law. All fees, expenses, commissions and charges set out in this Agreement are quoted exclusive of any such tax. Where any such tax is chargeable we will either make the appropriate deductions before remitting Net Sale Proceeds to you or invoice you. Phillips shall absorb the cost of any applicable consignment tax.

17. MISCELLANEOUS PROVISIONS

(a) This Agreement (including the Property Schedule and Payment Instructions) constitutes the entire agreement between you and Phillips with respect to the transactions contemplated herein and supersedes all prior and contemporaneous written, oral or implied understandings, representations and agreements between you and Phillips relating to the subject matter of this Agreement.

(b) No term of this Agreement shall be amended, supplemented or waived unless each of us has agreed to do so in writing.

(c) This Agreement shall be binding upon you and us and our and your legal representatives and permitted successors and assigns. Neither you nor Phillips may assign this Agreement without the prior written consent of the other party, except that Phillips may assign this Agreement to any of our affiliated companies without your prior consent.

(d) Notices to Phillips must be in writing and addressed to the department in charge of the sale, quoting the Contract Number on the first page of this Agreement. Phillips shall send notices to you at the address listed on the first page of this Agreement, unless after the date of this Agreement you have notified the department in charge of the sale in writing of a different address, in which case we will address any notices to you at that address. Notices shall be deemed to have been given five (5) calendar days after mailing to the address referred to above or within one (1) business day of delivery by hand, email, or facsimile.

(e) If you are acting as an agent or fiduciary for a disclosed or undisclosed principal or beneficiary, your representations, warranties and indemnities shall be binding on both you and your principal or beneficiary, as the case may be, jointly and severally.

(f) Phillips reserves the right to pay from our compensation hereunder an introductory commission to one or more third parties who assist us in the consignment and sale of the Property, who shall be identified under separate cover.

(g) This Agreement shall be governed by the laws of the State of New York, without giving effect to New York's choice of law provisions (other than New York General Obligations Law § 5-1401). If there is a dispute concerning the Property or this Agreement, you consent to the exclusive jurisdiction of, and waive any jurisdictional objections to: (i) the state courts of the State of New York located in New York County; and (ii) the United States District Court for the Southern District of New York. You also agree to waive your right to receive legal papers and legal process by personal service and instead agree that we may serve such papers and process by Certified Mail, Return Receipt Requested or through delivery by a recognized delivery service such as Federal Express in accordance with the notice provision set forth above.

(h) This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. This Agreement shall be valid and binding only when executed by both parties.

PHILLIPS AUCTIONEERS, LLC

By: _____

Amanda Lo Iacono
Head of 20th Century & Contemporary Art Evening Sale, Afternoon Session, New York

BY SIGNING BELOW, YOU CERTIFY THAT YOU HAVE READ, UNDERSTOOD AND AGREE TO THE TERMS AND CONDITIONS OF THIS AGREEMENT

JN Contemporary Art, LLC

By: _____

Joe Nahmad
JN Contemporary Art, LLC
980 Madison Avenue, 3rd Floor
New York, NY 10075
United States

*We must receive your original signature.

8

PROPERTY SCHEDULE

Estimates and Reserves in USD

Sale Number: NY010320      20th Century & Contemporary Art Evening Sale      May 2020

| Object Number | Lot Description | Low Estimate | High Estimate | Reserve |
|---|---|---|---|---|
| 131894 | RUDOLF STINGEL, *Untitled*, 2009<br><br>(Ex Sotheby's sale: March 7, 2018, Lot 19) | To be set in the discretion of Phillips | To be set in the discretion of Phillips | To be set in the discretion of Phillips |

PAYMENT INSTRUCTIONS

**Consignor:** JN Contemporary Art, LLC

**Consignor Address:**
980 Madison Avenue, 3rd Floor
New York, NY 10075
United States

**Client Number:** 879130

**Contract Date:** 27 June 2019

**Contract Number:** 04NYD752

**Department:** 20th Century & Contemporary Art - NY

**Sale No.:** NY010320

**Sale Date:** __ May 2020

This letter authorizes funds to be transferred to the account details below (please note that we can only send payment to our consignor/buyer of record). Net sale proceeds shall be paid by check (This only applies to sales in New York) or bank transfer to the account specified below and in the currency of the auction unless specified otherwise at least three business days prior to the date of the sale.

| Checks (NY Sales ONLY) | |
| --- | --- |
| Check Payable to: | |
| Check Send to Address: | |
| | |
| | |

| Wire Transfers | |
| --- | --- |
| Beneficiary Bank Name: | |
| Beneficiary Bank Address: | |
| | |
| | |
| Beneficiary Bank Post Code/Zip: | |
| Beneficiary Account Name: | |
| Beneficiary Bank Account Number: | |
| Beneficiary Account BIC/SWIFT Code: | |
| Beneficiary Account Sort Code **(ONLY UK BANKS):** | |
| Beneficiary Account IBAN Number **(ONLY FOR EU BANKS):** | |
| Beneficiary ABA Number **(ONLY FOR USA to USA BANKS):** | |
| Corresponding Bank Name: | |
| Corresponding Bank Address: | |
| Corresponding Bank Swift Code: | |
| Corresponding Bank ABA Number **(ONLY FOR USA to USA BANKS):** | |
| Special Instructions: | |
| Reference: | |
| Signed (Must match the Consignment Agreement Signature): | |