```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
JN CONTEMPORARY ART LLC,               :
                                       :
                         Plaintiff,    :      20cv4370 (DLC)
                                       :
              -v-                      :      OPINION AND ORDER
                                       :
PHILLIPS AUCTIONEERS LLC,              :
                                       :
                         Defendant.    :
                                       :
-------------------------------------- X
```

APPEARANCES

For plaintiff JN Contemporary Art LLC:
Aaron Richard Golub
Nehemiah Salomon Glanc
Russell I. Zwerin
Aaron Richard Golub, Esquire PC
35 East 64th Street, Suite 4A
New York, NY 10065

For defendant Phillips Auctioneers LLC:
Luke William Nikas
Maaren Alia Shah
Neil Thomas Phillips
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue
22nd Floor
New York, NY 10010

DENISE COTE, District Judge:

Plaintiff JN Contemporary Art LLC ("JN") has moved for a temporary restraining order to require defendant Phillips Auctioneers LLC ("Phillips") to offer a painting by artist Rudolf Stingel (the "Stingel Painting") at a public auction

while guaranteeing that JN receive a minimum of $5 million from the sale.  For the following reasons, the motion is denied.

## Background

The following facts are undisputed or drawn from the evidence submitted in connection with this motion.  The evidence consists of witness declarations and attached exhibits.  JN provided declarations of Joseph Nahmad ("Nahmad"), the manager of JN, and its outside counsel Nehemiah S. Glanc.  Phillips submitted declarations from two attorneys: its General Counsel, Americas, Hartley Waltman, and outside counsel Luke Nikas.  The parties have consented to this motion being resolved on this written record.

JN buys, sells, and exhibits works of art.  Phillips is an art auction house that takes works of art on consignment for public or private auction.  JN agreed with Phillips to place a bid at auction for a painting by Jean-Michel Basquiat (the "Basquiat Painting") and to consign the Stingel Painting to Phillips for auction.  Their agreement was recorded in two June 27, 2019 contracts, which will be referred to as the Basquiat Agreement and the Stingel Agreement.

The Basquiat Agreement required JN to place an "Irrevocable Bid" of GBP 3,000,000 for the Basquiat Painting at Phillips's 20th Century & Contemporary Art Evening Auction in London on

June 27, 2019.  In consideration for JN's irrevocable bid, Phillips agreed to pay JN a "Financing Fee" if JN or a third party purchased the Basquiat Painting for more than GBP 3,000,000.  The Financing Fee was 20% of the amount by which the final sale price exceeded the irrevocable bid.  JN placed its bid and a third-party bidder purchased the Basquiat Painting at the auction for GBP 3,200,000 plus additional fees.

Pursuant to the Stingel Agreement, JN agreed to consign the Stingel Painting to Phillips for sale at Phillips's "major spring 2020 evening auction of 20th Century & Contemporary Act currently scheduled for May 2020" (the "May Evening Auction").  Phillips guaranteed JN $5 million (the "Guaranteed Minimum").  If the Stingel Painting sold for more than the Guaranteed Minimum, Phillips would receive a commission "in the amount equal to twenty percent (20%) of the amount by which the final bid price . . . exceed[ed] the Guaranteed Minimum."  In Paragraph 7(b) of the Stingel Agreement, Phillips denied making any "representations or warranties to [JN] about the actual price at which [the Stingel Painting] will sell," and JN "agree[d] not to rely on pre-sale estimates as a prediction or guarantee of the value of a Lot or the price at which it will be sold."

Three provisions of the Stingel Agreement concern the schedule of the May Evening Auction.  Paragraph 3(c) provided that if the Stingel Painting suffered damage prior to the May Evening Auction, the Guaranteed Minimum would be void and JN could "decide whether to withdraw the [Stingel Painting] or to include such Property in the next appropriate auction after restoration has been completed with mutually agreed revised pre-sale estimates and terms of sale."  Paragraph 6(a) granted Phillips

> the sole right in [its] reasonable discretion . . . : (i) to select, change or reschedule the place, date and time for the auction but any change to a later date than May 2020 would be subject to [JN's] prior written consent.

Finally, Paragraph 12(a)[1] set forth a termination provision (the "Termination Provision").  It stated:

> In the event that the auction is <u>postponed for circumstances beyond our or your reasonable control, including, without limitation</u>, as a result of natural disaster, fire, flood, general strike, war, armed conflict, terrorist attack or nuclear or chemical contamination, we may terminate this Agreement with immediate effect.  <u>In such event, our obligation</u> to make payment of the Guaranteed Minimum <u>shall be null and void</u> and we shall have no other liability to you.

(emphasis supplied).

---

[1] The Stingel Agreement mis-numbered the operative paragraph as a second Paragraph 12.  The pleadings and memoranda refer to that provision as "Paragraph 12(a)."  This Opinion does the same.

4

On December 27, 2019, and using the Stingel Painting and another work as collateral, JN obtained a $5 million loan (the "Loan Agreement") from Muses Funding I LLC ("Muses").  On that same day, JN, Phillips, and Muses executed the Amendment to the Consignment Agreement (the "Security Amendment").  Pursuant to the Security Amendment, Phillips acknowledged Muses's first-priority lien on the Stingel Painting and agreed to pay Muses the Guaranteed Minimum and net sale proceeds from the auction of the Stingel Painting.

In March 2020, as the COVID-19 pandemic spread to New York, Governor Andrew Cuomo declared a Disaster Emergency and issued a series of executive orders restricting and eventually barring all non-essential business activities until June 2020.  On March 14, Phillips issued a public announcement on its website entitled "Auction Update: Temporary Closures & Postponements" stating:

> As more of our community of staff, clients and partners becomes affected by the spread of the Coronavirus, we have decided to <u>postpone all of our sales and events</u> in the Americas, Europe and Asia. . . .  Our upcoming 20th Century & Contemporary Art sales in New York will be held the week of 22 June 2020, consolidating the New York and London sales into one week of auctions.

(emphasis supplied).

On June 1, Leonid Friedland, the owner of Phillips, sent Nahmad an electronic message of an unsigned copy of a letter

dated May 31, 2020 terminating the Stingel Agreement pursuant to its Termination Provision (the "Termination Letter"). Phillips mailed a signed copy of the Termination Letter on June 2.[2] The Termination Letter provides, in relevant part:

> As you are well aware, due to the COVID-19 pandemic, since mid-March 2020 the New York State and New York City governments placed severe restrictions upon all non-essential business activities. . . .
>
> Due to these circumstances and the continuing government orders, we have been prevented from holding the Auction and have had no choice but to postpone the Auction beyond its planned May 2020 date.
>
> We are hereby giving you notice with immediate effect that: (1) Phillips is invoking its right to terminate the [Stingel Agreement]; (2) Phillips' obligation to make payment of the Guaranteed Minimum to you for the Property is null and void; and (3) Phillips shall have no liability to you for such actions that [are] required under applicable governing law.
>
> Our rights to act are as mutually agreed by you and us and are clearly set out in paragraph 12 of the [Stingel Agreement] . . . .

Meanwhile, on June 2, after receiving notice that Phillips had terminated the Stingel Agreement and would not pay JN the Guaranteed Minimum, Muses declared an Event of Default under the Loan Agreement. Muses executed a Conditional Short-Term Waiver of Default on June 2 (the "Default Waiver"). The Default Waiver

---

[2] Paragraph 17(d) of the Stingel Agreement states, in relevant part: "Notices shall be deemed to have been given five (5) calendar days after mailing to the address referred to above or within one (1) business day of delivery by hand, email, or facsimile."

6

delayed JN's deadline to repay the loan pursuant to the Loan Agreement from June 9 to August 31, 2020.  If JN does not satisfy the outstanding balance of the loan by August 31, Muses is entitled to a host of remedies, including payment of the balance plus interest accrued at a higher default rate.

On June 8, JN initiated this action.  On the same day, JN moved for a temporary restraining order.  JN seeks an order directing Phillips "to ensure that the Stingel [Painting] is auctioned at Defendant's next online auction for major contemporary works of art or Defendant's next in-person Evening Auction, or its equivalent."

Meanwhile, on June 12, Muses took possession of the Stingel Painting.  At a June 19 videoconference, the Court set a schedule for resolving JN's request for a temporary restraining order before proceeding with any discovery or the briefing for a separate motion for a preliminary injunction.

On June 23, JN filed a first amended complaint ("FAC"), asserting three causes of action.  It brings a breach of contract action under both the Basquiat and Stingel Agreements for Phillips's failure to offer the Stingel Painting at auction. The FAC also asserts that Phillips's termination of the Stingel Agreement violated the implied covenant of good faith and fair dealing.

On July 2, Phillips held a virtual auction entitled "20TH CENTURY AND CONTEMPORARY ART EVENING SALE NEW YORK AUCTION" (the "July Auction"). Phillips streamed the July Auction from London, but participants could place bids on the featured artwork remotely. This motion for a temporary restraining order was fully submitted on July 9.

## Discussion

JN seeks a temporary restraining order that would require Phillips to auction the Stingel Painting at the next available online or in-person auction of contemporary art and comply with the Stingel Agreement by paying JN the Guaranteed Minimum of $5 million for the work.[3] The relief that JN seeks is a mandatory injunction.[4]

"A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a

---

[3] An application for a temporary restraining order is subject to the same standard as a motion for a preliminary injunction. Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. N.Y. Shipping Ass'n, 965 F.2d 1224, 1228 (2d Cir. 1992).

[4] JN admitted that it sought a mandatory injunction until it filed its reply. In reply, it argues that any injunction would not alter the status quo and that Phillips is "estopped" from claiming that JN must meet the heightened standard to obtain a mandatory injunction because Phillips "changed the status quo by illegally terminating" the Stingel Agreement.

preliminary injunction is in the public interest." N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc., 883 F.3d 32, 37 (2d Cir. 2018) (citation omitted). "Because mandatory injunctions disrupt the status quo, a party seeking one must meet a heightened legal standard by showing a clear or substantial likelihood of success on the merits." Id. (citation omitted). Similarly, where a mandatory injunction "will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits, the movant must also: (1) make a strong showing of irreparable harm, and (2) demonstrate a clear or substantial likelihood of success on the merits." Yang v. Kosinski, 960 F.3d 119, 127–28 (2d Cir. 2020) (citation omitted).

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009) (citation omitted). "[T]o satisfy the irreparable harm requirement, [p]laintiff[] must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." Id. (citation omitted). "Where there is

an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." Id. (citation omitted).  Irreparable harm may be found "where there is a threatened imminent loss that will be very difficult to quantify at trial."  Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 38 (2d Cir. 1995).  Loss of consumer goodwill can constitute irreparable harm.  Id.  But, where "the alleged loss of goodwill [i]s doubtful" and lost profits are calculable "by past sales of [a] product and of current and expected future market conditions," courts will generally not find irreparable harm.  Id. (citation omitted).

JN has not established that it will suffer irreparable harm in the absence of a mandatory injunction entered in advance of trial.  An award of money damages will compensate it for any harm it may be able to establish at trial that it has suffered.

JN argues that the auction price of the Stingel Painting cannot be ascertained without conducting the auction.  JN has not presented evidence, however, that the value of the Stingel Painting cannot be established at trial.  As Phillips notes, there is an established profession of art appraisal with developed methods of valuation.  Indeed, appraisers have

previously predicted the Stingel Painting's auction price with reasonable accuracy.[5]

JN submits that Phillips acknowledged in Paragraph 7(b) of the Stingel Agreement that the price to be obtained at an auction is speculative.  In Paragraph 7(b), the parties agreed that their pre-contract estimates of the value of the Stingel Painting would not bind Phillips.  Phillips's refusal to guarantee a specific sale price ex ante, however, does not mean that the value of the work is impossible to determine for the purposes of a damages award, the amount of which need "only be proved with reasonable certainty."  Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 496 (2d Cir. 1995) (citation omitted).  In any event, at trial JN may seek specific performance through an auction.

Additionally, even if it were appropriate to assume on the record of this motion (and it is not) that it will be difficult to value the Stingel Painting at trial, JN has not shown that it would be irreparably harmed by deferring until trial its request for injunctive relief.  JN seeks the same compensatory relief on this motion that it hopes to obtain at the end of this litigation -- proceeds from an auction of the Stingel Painting.

---

[5] Phillips has submitted the results of a 2018 Sotheby's auction, in which the pre-auction appraisal for the Stingel Painting was GBP 4,000,000-6,000,000.  The work sold for GBP 4,667,000.

11

It has not established that there is a cognizable danger that it will suffer any additional injury during the pendency of this litigation.

In reply, JN asserts that Phillips's breach has harmed its "reputation, goodwill, ability to buy and sell inventory, to maintain employment of staff and to do business in the art marketplace that is dominated by three major auction houses, [and] many other intangibles too numerous to recite." It states that the intangible damages "go directly to the heart of whether or not Plaintiff can stay in business." These conclusory assertions are not evidence that JN has suffered anything other than compensable financial harm.

JN refers to several cases in which courts restrained the sale of an artwork because artwork is unique. Those cases are inapposite. Here, JN requests that Phillips dispose of the Stingel Painting and distribute the proceeds in accordance with the Stingel Agreement. JN's right to that relief will be wholly preserved while this litigation proceeds. Because JN has failed to establish that it will suffer irreparable harm in the absence of a temporary restraining order, it is not necessary to address the remaining requirements to obtain that remedy.

## **Conclusion**

JN Contemporary Art LLC's June 8, 2020 motion is denied.

Dated:   New York, New York
         July 15, 2020

```
                              _____
                                    DENISE COTE
                              United States District Judge
```